**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 12 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

OLANDER J. HICKLES,

        Petitioner-Appellant,

v.

DAVID MCKUNE, Warden, Lansing
Correctional Facility; CARLA
STOVALL, Attorney General of the
State of Kansas,

        Respondents-Appellees.

No. 99-3221
(D.C. No. 97-CV-3485)
(D. Kan.)

**ORDER AND JUDGMENT** *

Before **BRORBY** , **ANDERSON** , and **MURPHY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore

ordered submitted without oral argument.

---

*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Petitioner-appellant Olander J. Hickles, a state prisoner appearing pro se, appeals the district court's decision denying his petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254, and also denying his request for a certificate of appealability. Hickles challenges his first-degree murder conviction, alleging that the state trial court admitted into evidence a confession obtained in violation of the Fifth Amendment and the holding of Miranda v. Arizona, 384 U.S. 436, 478-79 (1966). We deny a certificate of appealability (COA) and dismiss the appeal.

## BACKGROUND

While visiting at another individual's house with his girlfriend and the estranged wife of the victim, Earl Whetstone, Hickles made threats on Whetstone's life. Shortly afterwards, Whetstone appeared at the house. Hickles and Whetstone traded derogatory comments and Hickles again threatened to kill Whetstone. A fight ensued, first inside and then outside of the house. During the struggle, Hickles drew his knife. Whetstone had no weapon.

Hickles' girlfriend testified that she saw him thrust the knife three times at Whetstone, and that she was standing close enough to see blood on the knife and to be spattered by Whetstone's blood. R., Trial Tr. Vol. II, at 305-10. In addition, she testified that, with Whetstone lying on the ground in a pool of blood,

-2-

Hickles kicked him hard in the chest and head. Id. at 312. Whetstone's wife also testified that she witnessed the kicking. Id. at 270-73. Hickles then left the scene with his girlfriend, telling her that he had stabbed Whetstone six times. Id. at 318. Whetstone, who had sustained eight stab wounds, three cuts, and blunt trauma injuries to the facial area, died within minutes.

Hickles was taken into custody and advised of his Miranda rights. In response to questions of the law enforcement officers, Hickles stated that he did not have anything to say. Hickles, however, did not remain silent. He asked questions of the officers and, in turn, the officers continued to question him. Fifteen to thirty minutes into the interview, Hickles stated that his knife had fallen to the ground during the fight, that he and Whetstone had struggled for possession of it, and that somehow Whetstone got stabbed. At the jail, Hickles was heard to say that "[i]t was either him or me" and that "I'm glad it was him instead of me." R., Trial Tr. Vol. IV, at 774.

Hickles was charged with first-degree murder. After holding a hearing to determine the voluntariness of the statement Hickles made to the officers, the trial court admitted the statement into evidence. At trial, Hickles' only theory of defense was that the eyewitnesses were intoxicated and unreliable, particularly because the incident was "over in the blink of an eye." R., Tr. of Closing Argument, at 18-19. This theory was not inconsistent with Hickles' statement.

The jury returned a guilty verdict and Hickles appealed to the Kansas Supreme Court. Among other claims of error, Hickles alleged that the statement was inadmissible because it had been obtained in violation of his Fifth Amendment right to remain silent. According to Hickles, his initial response to the officers constituted an affirmative assertion of his right to remain silent and, therefore, all questioning should have ceased. The Kansas Supreme Court disagreed, determining that "[w]hen the totality of the circumstances is considered, . . . there was substantial competent evidence to support the trial court's finding of voluntariness and admissibility of Hickles' statement." State v. Hickles, 929 P.2d 141, 149 (Kan. 1996).

Hickles then filed his habeas petition in federal district court. The district court did not conduct a Miranda analysis. Instead, it carefully reviewed the evidence and determined that "[e]ven . . . assum[ing] the admission of the confession was improper, the other evidence presented against the petitioner at trial clearly shows that such an error was harmless." R., Pleadings, No. 14, at 7. The district court denied the petition and this appeal followed.

**ANALYSIS**

No appeal can be taken from the final order in a habeas corpus proceeding unless the petitioner is issued a certificate of appealability. See 28 U.S.C.

-4-

§ 2253(c). The Supreme Court has recently addressed the requirements for obtaining a COA under § 2253(c).

> [A] habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."

Slack v. McDaniel, 120 S. Ct. 1595, 1603-04 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893, & n.4 (1983) (further quotations omitted)). Where, as here, "a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. at 1604.

The "erroneous admission of a coerced confession is subject to harmless error analysis under Arizona v. Fulminante, 499 U.S. 279, 310 . . . (1991)." Castro v. Ward, 138 F.3d 810, 823 (10th Cir. 1998) (citing United States v. McCullah, 76 F.3d 1087, 1101 (10th Cir. 1996)). A federal court should not grant habeas relief unless it finds the state court's trial error "'had substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). Thus, the erroneous admission of a confession may be "harmless in light of the 'overwhelming evidence to convict [the defendant] of

the crimes charged even in the absence of his coerced statements.'" <u>Castro</u>, 138 F.3d at 823 (quoting <u>McCullah</u>, 76 F.3d at 1101).

Even if, like the district court, we assume that the admission of the challenged statement was error, we conclude it is harmless error in light of the other evidence properly admitted. Hickles has therefore failed to make a substantial showing of the denial of a constitutional right, as required by § 2253(c)(2). For substantially the same reasons articulated in the district court's order of June 14, 1999, attached hereto, we deny Hickles' request for a certificate of appealability and DISMISS his appeal.

Entered for the Court

Wade Brorby
Circuit Judge

Attachment not available electronically.